Anne R. Kramer (SBN 315131)
Douglas M. Werman (*pro hac vice* motion forthcoming)
John J. Frawley (*pro hac vice* motion forthcoming)
**WERMAN SALAS P.C.**
akramer@flsalaw.com
dwerman@flsalaw.com
jfrawley@flsalaw.com
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone No.: (312) 419-1008

*Attorneys for Plaintiffs Jasper Pierson Walker and Michael Walker*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

JASPER PIERSON WALKER and MICHAEL WALKER, on behalf of themselves and all other similarly situated individuals,

Plaintiffs,

v.

OTTER.AI, INC.,

Defendants.

Case No.

**COMPLAINT**

1. **Violation of Section 15(a) of the Illinois Biometric Information Privacy Act**
2. **Violation of Section 15(b) of the Illinois Biometric Information Privacy Act**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiffs Jasper Pierson Walker and Michael Walker ("Plaintiffs") bring this putative class action against Otter.ai, Inc. ("Defendant") for violations of the Illinois Biometric Information Privacy Act ("BIPA"). Plaintiffs' allegations regarding their own experiences are based on their personal knowledge. Plaintiffs' allegations regarding all other matters are based on information and belief, informed by counsel's reasonable investigation.

## I.  INTRODUCTION

1. This action arises out of Defendant's collection and use of Plaintiffs' sensitive biometric data, which occurred without Plaintiffs' knowledge or consent.

2. Defendant is a transcription software company that uses artificial intelligence ("AI") to power its products.

3. Defendant's software ("Otter" or "Otter.ai") integrates with video-conference platforms like Zoom. When in use, Otter records all speakers on a video-conference and creates a voiceprint associated with each of them. It then uses this voiceprint to create a transcript of the meeting. And it stores each voiceprint so that, in future meetings, Otter can identify the same individuals and transcribe their conversations.

4. The voiceprints that Otter collects qualify as biometric data subject to BIPA's protections.[1] And for good reason. Voiceprints are often used to authenticate individuals' identities when those individuals seek access to restricted personal or financial information. Thus, individuals whose voiceprints are stolen or compromised are at increased risk of identity theft and fraud. Accordingly, BIPA requires that private entities notify, and obtain consent from, individuals before collecting their voiceprints.

---

[1] Herein, the term "biometric data" refers collectively to biometric information and biometric identifiers, as defined within BIPA.

5.      Defendant violates these requirements.  Otter automatically collects voiceprints from video-conference participants without notifying them that it is collecting their biometric information, much less obtaining their consent to that collection.

6.      Defendant's BIPA violations are reckless and intentional.  Defendant's website indicates that Defendant canvassed state-by-state data privacy laws, and even *international* privacy laws, before releasing the Otter software.  And Defendant has taken steps to ensure its software complies with many of these laws.  Yet it has made no efforts to comply with BIPA, even though its investigation of data privacy laws must have apprised Defendant of BIPA's requirements.

7.      As a result, Plaintiffs and members of the below-defined class (the "Class") are entitled to statutory damages and injunctive relief.  Defendant must compensate Plaintiffs and members of the Class for its unauthorized collection of their sensitive data, and it must permanently delete that data to ensure Plaintiffs and Class members are not subject to fraud or identity theft.

## II.    PARTIES

8.      Plaintiff Jasper Pierson Walker is a Chicago, Illinois resident.  While in Illinois on January 10, 2025 and May 19, 2025, she participated in Zoom meetings with a financial planner.  The meetings were recorded by Otter.ai.  During the meetings, Otter.ai captured Ms. Walker's voiceprint and the voiceprints of other attendees, and it created a transcript of the conversation.  Otter.ai did so without first informing Ms. Walker that it was collecting her biometric data and without first obtaining, from her, a written release for the collection of that data.

9.      Plaintiff Michael Walker is a Chicago, Illinois resident.  While in Illinois on January 10, 2025 and May 19, 2025, he participated in Zoom meetings with a financial planner.  The meetings were recorded by Otter.ai.  During the meetings, Otter.ai captured Mr. Walker's voiceprint and the voiceprints of other attendees, and it created a transcript of the conversation.  Otter.ai did so without first informing Mr. Walker that it was collecting his biometric data and

without first obtaining, from him, a written release for the collection of that data.

10. Defendant Otter.ai, Inc. is a corporation incorporated in Delaware. Its principal place of business is 800 West El Camino Real, Suite 170, Mountain View, California.

### III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is diversity of citizenship between the parties. This Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(d) because this is a class action with more than 100 class members, there is diversity of citizenship among the parties, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12. This Court has general personal jurisdiction over Defendants because Defendants maintain their headquarters and principal place of business at the above-listed California address.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendants reside in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district. Further, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction with respect to this lawsuit.

### IV. FACTUAL ALLEGATIONS

**A. Defendant collected and possessed Plaintiffs' biometric data.**

14. Defendant incorporated in Delaware on March 15, 2016. It released the first application utilizing Otter in March 2018. In February 2023, Defendant released OtterPilot, a "Smart AI Meeting Assistant" with enhanced features to improve upon Otter. https://otter.ai/blog/otter-surpasses-1-billion-meetings-transcribed-and-launches-otterpilot-tm-the-smart-ai-meeting-assistant-to-eliminate-note-taking-and-automate-meeting-summaries (last

visited August 3, 2025).

15. At "its core," Otter provides "a specialized artificial intelligence platform designed to transcribe spoken words into written text." https://web.archive.org/web/20240918135606/https://otter.ai/t/meeting-insights/what-is-otter-ai. It "caters to a variety of users, from professionals who need to document meetings to students who record lectures for later review." *Id.*

16. According to Defendant, "[w]hat sets Otter apart from other transcription services is its ability to identify different speakers in a conversation, segregate their contributions, and provide real-time transcription that [users] can access from anywhere." *Id.* To accomplish this, Otter relies on "cutting-edge voice recognition technology" aided by artificial intelligence and "machine learning." *Id.*

17. This technology collects "speaker identification data" that consists of individuals' unique voiceprints ("Speaker Data"). https://tinyurl.com/2sd6kumh; *see also* https://otter.ai/terms-of-service (noting that Otter "may Process voiceprints to recognize users and automatically tag their name within the transcript").

18. Otter then associates Speaker Data with individuals' identities. This occurs in one of two ways. When one of Defendant's clients uses OtterPilot, OtterPilot "automatically tag[s] speakers in real-time based on the participant names of Zoom meetings." https://tinyurl.com/2sd6kumh. When one of Defendant's clients uses Otter without using OtterPilot, Otter will provide generic labels to each speaker (such as "Speaker 1" and "Speaker 2"), and the client then "tags" each speaker by manually typing in their name. https://tinyurl.com/3hb56eey. Tagging creates a "speaker identification profile" associated with the name and the Speaker Data. https://help.otter.ai/hc/en-us/articles/21665876084119-Rematch-

4
**CLASS ACTION COMPLAINT**

a-speaker.

19. Defendant then retains the Speaker Data so that Otter "will be able to recognize that speaker in future conversations." https://tinyurl.com/2sd6kumh. In those conversations, Otter automatically associates the Speaker Data with the speaker's identity for transcription purposes.

20. Defendant retains Speaker Data indefinitely. An FAQ page on Defendant's website states as follows: "Can I delete a speaker? No. You cannot delete a speaker at this time." *Id.*

21. Through the foregoing process, Defendant collected and possessed Plaintiffs' Speaker Data and linked it to Plaintiffs' names during the aforementioned video-conferences with Plaintiffs' financial planner, and also collected and possessed Speaker Data from members of the Class in numerous other videoconferences during the statutory limitations period applicable to this suit.

B. **Defendant did not obtain consent before collecting and possessing Plaintiffs' biometric data, nor did it first publish a data retention and destruction policy.**

22. Defendant did not obtain Plaintiffs' consent before collecting and possessing their biometric data. When an individual signs onto a video-conference on which Otter is running, they are not informed that their voiceprints or biometric data are being collected. Nor are they asked to execute a release authorizing the collection of their biometric data.

23. Prior to collecting Plaintiffs' biometric data, Defendant did not publish any publicly available, written policy concerning how and when it retains and destroys biometric data in compliance with BIPA. In fact, Defendant's publicly available policies do not mention or discuss BIPA at all.

C. **Defendant negligently, recklessly, and intentionally violated BIPA.**

24. Defendant's above-described actions violated BIPA. And Defendant's violations were negligent, reckless, and/or intentional.

5
**CLASS ACTION COMPLAINT**

25. Illinois enacted BIPA in 2008. Since that time, numerous articles regarding the law's requirements have been published. And numerous lawsuits regarding the same have been filed. Due to these articles and lawsuits, Defendant knew or should have known that its data collection practices violated the law.

26. This is especially so given that Defendant canvassed state, federal, and international data privacy laws in connection with the release of its Terms of Service ("Terms"). The Terms direct Defendant's vendors to "comply with the obligations" of the "State Privacy Laws" defined within the Terms. https://otter.ai/terms-of-service. Defendant lists State Privacy Laws to include the California Consumer Privacy Act, the Colorado Privacy Act, the Connecticut Personal Data Privacy and Online Monitoring Act, the Utah Consumer Privacy Act, and the Virginia Consumer Data Protection Act. *Id.* Yet Defendant does not name BIPA even though it is clear, from elsewhere on its website, that Defendant has reviewed Illinois law. Its website provides a "state-by-state breakdown" of laws governing call recordings, which includes a section on Illinois. https://otter.ai/blog/is-it-illegal-to-record-someone-without-their-permission ("Illinois is another all-party consent state when recording conversations and electronic communications. Exceptions include recording in public spaces where privacy isn't reasonably expected.") (last visited August 3, 2025).

27. Defendant also names international data privacy laws in the Terms. They include the European Union's General Data Protection Regulation and the United Kingdom's General Data Protection Regulation and e-Privacy Directive. https://otter.ai/terms-of-service.

28. During its exhaustive search of domestic and foreign law, Defendant must have (or should have) become acquainted with BIPA's requirements. Yet Defendant nevertheless disregarded those requirements.

29. Defendant's hesitance to comply with BIPA may be explained by the value that Defendant derives from collecting and retaining biometric data. Defendant relies on the dataset of voiceprints it collects to run Otter. As Defendant puts it: "Otter AI relies on cutting-edge voice recognition technology to provide its services. At the forefront of this technology is machine learning, where the system continuously improves its speech recognition capabilities based on a vast dataset of voices and accents." https://web.archive.org/web/20240918135606/https://otter.ai/t/meeting-insights/what-is-otter-ai.

## V.  CLASS ACTION ALLEGATIONS

30. Plaintiffs bring this action on behalf of themselves and all individuals whose Speaker Data was collected by Otter, while the individuals were in the State of Illinois, during the five years preceding the filing of this suit through the present (the "Class"). Plaintiffs reserve the right to alter this class definition at the class certification stage and to move for the certification of sub-classes, where appropriate, such as a sub-class that excludes individuals who first executed the Otter.ai, Inc. Terms of Service before having their Speaker Data collected.

31. The Class meets the certification prerequisites of Federal Rule of Civil Procedure 23(a). Its members are too numerous for practicable joinder, given that Otter has collected the Speaker data of thousands of Illinois citizens during the applicable limitations periods. There are also questions of law and fact common to the above-defined Class, such as whether Defendant published a compliant BIPA policy before collecting Class members' data; whether the data Defendant collects constitutes biometric data under BIPA; and whether Defendant's BIPA violations were negligent, reckless, and/or intentional. Plaintiffs' claims are typical of the Class's claims because they arise from the same course of conduct, and policies, of Defendant, and both Plaintiffs' claims and the Class's claims depend on the same legal theories. Further, Plaintiffs and their counsel are adequate representatives of the Class. Plaintiffs have suffered the same injury as

members of the Class; Plaintiffs have no conflicts of interest with members of the Class; and Plaintiffs' counsel is highly experienced in class action litigation, including BIPA class action litigation.

32. The Class also meets the certification requirements of Federal Rule of Civil Procedure 23(b)(3). Questions of law and fact common to Class members predominate over any questions affecting only individual members, given that this case hinges on whether Defendant's uniform practices and policies violate BIPA. And a class action is superior to other available methods for adjudicating this controversy. It will promote fairness, justice, and efficiency, as well as reduce litigation costs and duplicative litigation stemming from the collection of thousands of Illinois citizens' biometric data by Defendant.

## VI. CAUSES OF ACTION

33. Plaintiffs seek the following relief based on the following causes of action.

**First Cause of Action**
**Violation of Section 15(a) of BIPA**
**(Brought by the Plaintiff on Behalf of the Class)**

34. Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

35. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

36. Plaintiffs' and the Class's Speaker Data qualify as "biometric identifier[s]" or "biometric information" as defined by BIPA. *Id.*

37. Defendant violated BIPA by collecting and possessing Plaintiffs' and the Class's Speaker Data without first publishing a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever

occurs first." 740 ILCS § 14/15(a).

38. As a result, Plaintiffs and members of the Class each seek and are entitled to (1) liquidated damages of $1,000 for each of Defendant's negligent violations; (2) liquidated damages of $5,000 for each of Defendant's reckless or intentional violations; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; (4) injunctive relief; and (5) any other relief that the Court deems appropriate. *Id.* § 14/20.

## Second Cause of Action
## Violation of Section 15(b) of BIPA
### (Brought by the Plaintiff on Behalf of the Classes)

39. Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

40. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

41. Plaintiffs' and the Class's Speaker Data qualify as "biometric identifier[s]" or "biometric information" as defined by BIPA. *Id.*

42. Defendant violated BIPA by collecting and possessing Plaintiffs' and the Class's Speaker Data without first: informing them in writing that a biometric identifier or biometric information was being collected or stored; informing them in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used; or obtaining a written release from them regarding the collection and storage of their biometric data. *Id.* § 14/15(b).

43. As a result, Plaintiffs and members of the Class each seek and are entitled to (1) liquidated damages of $1,000 for each of Defendant's negligent violations; (2) liquidated damages of $5,000 for each of Defendant's reckless or intentional violations; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; (4) injunctive relief; and (5) any other relief that the Court deems appropriate. *Id.* § 14/20.

**PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, demand a jury trial for all claims so triable and respectfully request that the Court grant the following relief:

A. Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as representatives of the Class and designation of counsel of record as counsel for the Class;

C. A declaratory judgment that the practices complained of herein are unlawful;

D. An award of statutory damages, injunctive relief, and other relief provided for under the foregoing causes of action as set forth above;

E. An award of attorneys' fees and costs incurred in this action, including expert fees;

F. Pre-judgment and post-judgment interest, as provided by law;

G. A reasonable service award for each Plaintiff; and

H. All other legal and equitable relief that this Court deems necessary, just, and proper.

Dated: August 26, 2025

Respectfully submitted,

*/s/ Anne R. Kramer*

Anne R. Kramer (SBN 315131)
Douglas M. Werman (*pro hac vice* motion forthcoming)
John J. Frawley (*pro hac vice* motion forthcoming)
**WERMAN SALAS P.C.**
akramer@flsalaw.com
dwerman@flsalaw.com
jfrawley@flsalaw.com
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone No.: (312) 419-1008